## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

MARTA MCCLANAHAN and JESSICA STINSON,

      Plaintiffs,

v.

MEDICREDIT, INC.,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)

No. 3:19-cv-00163

## MEMORANDUM OPINION

Marta McClanahan (formerly known as Marta Stinson) and her daughter Jessica Stinson (collectively, "Plaintiffs") brought this action against Medicredit, Inc. ("Medicredit") for allegedly violating the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 <u>et seq.</u>, and Tennessee law. Before the Court are two motions that are ripe for decision: (1) Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 44) on the issue of liability only (<u>see also</u> Doc. Nos. 45, 58–60); and (2) Medicredit's Motion for Summary Judgment (Doc. No. 53; <u>see also</u> Doc. Nos. 54, 61–63). For the following reasons, Plaintiffs' motion will be denied and Medicredit's motion will be granted in part.

## I.    BACKGROUND AND UNDISPUTED FACTS[1]

On February 24, 2017, Jessica Stinson received a medical procedure at Centennial Medical Center ("Centennial") and incurred a debt to Centennial for those services. (Doc. No. 61 at ¶ 15.) At the time of her procedure, Stinson was over the age of 18, lived with her mother, McClanahan,

---

[1] The Court draws the facts in this section from the undisputed portions of the parties' statements of facts (Doc. Nos. 59, 61), the exhibits, depositions, and declarations submitted in connection with the summary judgment briefing, portions of the First Amended Complaint (Doc. No. 33) that are not contradicted by the evidence in the record, and the parties' Joint Stipulations of Fact (Doc. No. 72) submitted in anticipation of trial.

and was a dependent under McClanahan's medical insurance. (Id. at ¶¶ 20–21, 23; Doc. Nos. 59 at ¶ 9; 57-2 at 3.) McClanahan knew about Stinson's procedure and even drove her to and from the hospital that day.[2] (Doc. No. 61 at ¶ 25.) Although McClanahan paid the premiums associated with Stinson's insurance coverage, there is no evidence that she signed any documents making her the guarantor for Stinson's Centennial debt. (Id. at ¶¶ 23–24; Doc. No. 59 at ¶ 10.)

Medicredit is a debt collection corporation that performs past due collections for Centennial. (Doc. No. 61 at ¶ 11.) After Stinson failed to pay her debt to Centennial for several months, Centennial sent her delinquent account to Medicredit for collection on October 13, 2017. (Id. at ¶ 8.) Centennial also provided a document to Medicredit incorrectly identifying McClanahan as the guarantor for Stinson's account.[3] (Id. at ¶ 16; Doc. No. 56-6.) This document included McClanahan's address, social security number, phone number, and employer, but listed the same birthdate for both Stinson and McClanahan. (Doc. No. 61 at ¶ 17; Doc. No. 56-6.)

---

[2] Curiously, Plaintiffs admit that Stinson had a procedure on "February 24, *2018*," (Doc. No. 61 at ¶ 25 (emphasis added)), and the parties' Joint Stipulation of Fact also refers to a "February 24, 2018 procedure," (Doc. No. 72 at ¶ 20). For purposes of ruling on the pending motions, the Court assumes that "2018" was a typographical error and that the parties meant "2017," particularly given that the parties' other undisputed statements of fact mention "February 24, 2017," (Doc. No. 61 at ¶ 15; Doc. No. 72 at ¶ 13), and none of their summary judgment briefs suggest that Stinson had a medical procedure in 2018.

[3] There is a dispute about *why* Centennial determined that McClanahan was Stinson's guarantor, and the record before the Court is unclear on this point. (See Doc. No. 61 at ¶¶ 18–19.) Central to this dispute are "Centennial's notes" (Doc. No. 56-7) from February 24, 2017, which, according to Medicredit, reflect that Stinson told Centennial that she would have "to call her mother" and would "call back about the [estimated liability]." (Doc. No. 54 at 3.) But these notes have not been authenticated by any record custodian from Centennial, and the Sixth Circuit "has ruled that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise they must be disregarded." Moore v. Holbrook, 2 F.3d 697, 699 (6th Cir. 1993) (citations omitted); see also Alexander v. CareSource, 576 F.3d 551, 558–59 (6th Cir. 2009). Therefore, the Court has decided not to consider Centennial's notes on summary judgment because they have not been authenticated. In doing so, the Court makes no determination about whether these notes are also hearsay.

2

Medicredit has a written policy requiring its clients, including Centennial, to obtain all necessary signatures on all registration forms (Doc. No. 56-5), and Medicredit relies on the validity of this information.[4] (Doc. No. 61 at ¶¶ 12, 14.) Thus, based on Centennial's representation that McClanahan was the guarantor for Stinson's account, Medicredit sent McClanahan a letter on April 6, 2018, seeking to collect on Stinson's debt. (Id. at ¶ 35; Doc. No. 56-8.) This letter listed "Jessica Stinson" under "Patient Name," referenced a "Client Account #" ending in "-1493," and included a "Balance Due on File" for Stinson's February 24, 2017 procedure at Centennial. (Doc. No. 56-8 at 1; see also Doc. No. 59 at ¶ 8.) The letter also stated that "[t]his communication is from a debt collector and is an attempt to collect a debt[,]" and that "[t]he account(s) listed below have been placed with [Medicredit] with the full intention of collecting on this account(s). Please give the past due account(s) the attention it deserves." (Doc. No. 56-8 at 1.)

On May 8, 2018, McClanahan advised Medicredit by phone that she was not the guarantor for Stinson's Centennial account and revoked her consent to be contacted about that debt. (Doc. No. 61 at ¶ 37.) In response, Medicredit updated its internal notes to reflect that McClanahan was not the guarantor for Stinson's debt, and never contacted McClanahan about that debt again. (Id. at ¶¶ 38–39.)

Also on May 8, 2018, McClanahan filed the following complaint against Medicredit to the Consumer Financial Protection Bureau ("CFPB"):

> I received a letter from Medicredit re: Jessica Stinson who is an adult. I called them and told them that I was not responsible for this debt. They opened a dispute with the medical center, more than 60 days again and it has not been resolved. (Centennial Medical Center). In addition, they have continued to try to collect the debt from me. I have advised them again today that it is not my debt and they have

---

[4] There is a dispute of fact regarding whether and to what extent Medicredit's employees are trained on this policy and tested to ensure compliance with the FDCPA. (See Doc. Nos. 61 at ¶ 13; 59 at ¶¶ 17–18.)

3

not provided proof or resolved my complaint and should not be sending me any correspondence about this debt. . . .

(Doc. No. 56-9 at 1; <u>see also</u> Doc Nos. 59 at ¶ 19; 61 at ¶ 41.) On July 17, 2018, Medicredit submitted the following nonpublic response to the CFPB and McClanahan:

Medicredit has received the complaint filed by [McClanahan] and has conducted a thorough investigation. Please see our findings below. The account mentioned in the consumer's complaint, ending in -1493, was placed with our office on October 13, 2017, with [McClanahan] listed as the guarantor. On October 14, 2017 a notice was mailed to the address provided by the consumer to our client at the time of service. On February 23, 2018, Medicredit was able to successfully contact [McClanahan] and she requested no further calls or letters from our office, but did not indicate any dispute regarding proper guarantor. On May 8, 2018 the patient, Jessica Stinson, contacted Medicredit to raise the concern of proper guarantor. On May 11, 2018 the account was corrected and [McClanahan's] information was removed. Subsequently, Medicredit submitted a deletion request to the credit reporting agencies (CRAs) on that same day. **Additionally, [McClanahan], has two open and active accounts placed with Medicredit.**

(Doc. No. 56-10 at 3–4 (emphasis added); <u>see also</u> Doc. No. 61 at ¶ 43.) Medicredit then provided the CFPB with details about McClanahan's accounts, including partial account numbers, the specific creditors for her debts, and the remaining balances McClanahan owed.[5] (Doc. No. 56-10 at 4.) Medicredit also attached numerous personal documents regarding McClanahan's medical information, including an intake form and insurance information disclosing the medical procedures she had undergone. (Doc. No. 56-10 at 7–19.)

Based on Medicredit's April 6, 2018 letter and its communications to the CFPB, Plaintiffs brought claims against Medicredit for allegedly violating multiple FDCPA provisions and committing the Tennessee common law tort of intrusion upon seclusion by (1) improperly attempting to collect Stinson's debt from McClanahan, (2) disclosing McClanahan's alleged other

---

[5] To preserve the potential confidentiality of this information, the Court has decided not to quote this portion of Medicredit's response to the CFPB complaint.

4

debts and medical information to the CFPB, and (3) disclosing Stinson's debt to McClanahan. The parties have both moved for summary judgment on the issue of liability.

## II.  LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Id. (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). "And where, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016) (quoting Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991)). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

5

## III.    ANALYSIS

Other than Plaintiffs' claims that Medicredit committed the Tennessee common law tort of intrusion upon seclusion, the claims in this case involve alleged violations of the FDCPA. Therefore, it is helpful to begin with some background of the statute and the general legal framework involved with FDCPA claims.

Congress enacted the FDCPA to protect consumers by eliminating widespread "abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and "the recurring problem of debt collectors dunning the wrong person . . ." <u>Fed. Home Loan Mortg. Corp. v. Lamar</u>, 503 F.3d 504, 508 (6th Cir. 2007) (citation omitted). The FDCPA is an "extraordinarily broad" statute and imposes strict liability, meaning a plaintiff does not need to prove knowledge or intent or have suffered actual damages. <u>Stratton v. Portfolio Recovery Assocs., LLC</u>, 770 F.3d 443, 448–49 (6th Cir. 2014). As the Court will explain more fully below, "[a]n exception to strict liability exists only where a debt collector commits a violation resulting from a 'bona fide error.'" <u>Kistner v. Law Offices of Michael P. Margelefsky, LLC</u>, 518 F.3d 433, 441 (6th Cir. 2008) (citing 15 U.S.C. § 1692k(c)).

Medicredit does not dispute that it is a "debt collector" under the FDCPA.[6] (Doc. No. 59 at ¶ 4.) "To determine whether a debt collector's conduct runs afoul of the FDCPA, '[c]ourts must view any alleged violation through the lens of the 'least sophisticated consumer'—the usual objective legal standard in consumer protection cases.'" <u>Stratton</u>, 770 F.3d at 450 (quoting <u>Gionis v. Javitch, Block, Rathbone, LLP</u>, 238 F. App'x 24, 28 (6th Cir. 2007)); <u>see also</u> <u>Currier v. First</u>

---

[6] Subject to some limited exceptions not relevant here, the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any dets, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

6

Resolution Inv. Corp., 762 F.3d 529, 533 (6th Cir. 2014). The least sophisticated consumer standard asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a debt collector's communication might be misled by it. Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 172 (6th Cir. 2011) (citing Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 592 (6th Cir. 2009)). The standard is lower "than simply examining whether particular language would deceive or mislead a reasonable debtor," Smith v. Computer Credit, Inc., 167 F.3d 1052, 1054 (6th Cir. 1999) (citation omitted), and "recognizes that the FDCPA protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices," Currier, 762 F.3d at 533 (citing Barany-Snyder v. Weiner, 539 F.3d 327, 333 (6th Cir. 2008).

With this background in mind, the Court will now address the parties' specific arguments in their respective motions for summary judgment.

A.     McClanahan's Claims Based on Medicredit's April 6, 2018 Debt Collection Letter

McClanahan claims that Medicredit violated 15 U.S.C. §§ 1692e, e(2)(A), e(2)(B), e(10), f, and f(1) by falsely representing or implying in its April 6, 2018 letter that she was responsible for paying Stinson's Centennial debt. (See Doc. No. 45 at 6–7.) Because §§ 1692e and 1692f involve different legal standards, the Court will address these statutory provisions separately.

1.     Sections 1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(10)—False or Misleading Representations

a.     Substantive Violations

Section 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Without defining what a "false, deceptive, or misleading representation" is, the statute sets

7

forth a nonexhaustive list of qualifying conduct including § 1692e(2)(A), which prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt," § 1692e(2)(B), which proscribes "[t]he false representation of . . . any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," and § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

As an initial matter, it is unclear whether McClanahan has abandoned her § 1692e(2)(B) claim because she does not mention that provision anywhere in her summary judgment briefing. (Compare Compl. at 8 (alleging that Medicredit violated § 1692e(2)(B) as to McClanahan), with Doc. No. 45 at 6–7 (arguing that Medicredit violated only §§ 1692e, e(2)(A), e(10), f, and f(1)). But even if McClanahan did not abandon this claim, she has not offered any evidence to show that the April 6, 2018 letter falsely represented the total amount Stinson owed to Centennial. Moreover, Stinson testified that she eventually paid the full amount of her debt without indicating that Medicredit sought more money than she owed. (See Doc. No. 57-2 at 6.) Thus, because Medicredit did not make any false statements about the *amount* of debt owed, the Court will dismiss McClanahan's § 1692e(2)(B) claim. See Gionis v. Javitch, Block, Rathbone, LLP, 405 F. Supp. 2d 856, 865 (S.D. Ohio 2005) (granting summary judgment and dismissing § 1692e(2)(B) claim because neither the debt collector's complaint nor affidavit "contain[ed] any false statements about the amount owed"), aff'd, 238 F. App'x 24 (6th Cir. 2007).

Next, to determine whether Medicredit violated §§ 1692e, e(2)(A), or e(10), the Court looks to whether the "least sophisticated consumer" would be deceived or misled by the April 6, 2018 letter. Wallace v. Washington Mutual Bank, F.A., 683 F.3d 323, 326 (6th Cir. 2012). A collection letter can be deceptive or misleading to the least sophisticated consumer if it is "open to

8

more than one reasonable interpretation, at least one of which is inaccurate." Kistner, 518 F.3d at 441 (citation omitted) (holding "that the 'more than one reasonable interpretation' standard is applicable to the entirety of § 1692e as a useful tool in analyzing the 'least-sophisticated-consumer' test"). And if a letter could be susceptible to more than one reasonable interpretation and one of those interpretations is inaccurate, "a *jury* should determine whether the letter is deceptive and misleading."[7] Id. (emphasis added).

Whether the least sophisticated consumer would have been deceived or misled by Medicredit's April 6, 2018 letter certainly presents a close call. On one hand, the least sophisticated consumer could have interpreted the letter as obligating her to pay Stinson's medical debt, particularly because the letter was addressed to McClanahan, stated that it was "from a debt collector" in "an attempt to collect a debt," and referenced a specific "Balance Due on File" for the services Stinson received at Centennial on February 24, 2017. (Doc. No. 33-3 at 1.) On the other hand, the least sophisticated consumer who considered carefully the letter could have viewed it as a mistake, which is exactly what McClanahan in fact did when she contacted Medicredit about its error. (Doc. No. 61 at ¶¶ 35, 37); see also Bodur v. Palisades Collection, LLC, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011) (noting that "the least sophisticated consumer might have viewed [the] collection letter as an innocent mistake"). This mistake became further apparent when, in response

---

[7] As Judge Aleta A. Trauger noted in Samples v. Midland Credit Mgmt., Inc., "[t]here appears to be a split of authority among the circuit courts as to whether, when the facts of a particular debt collection communication are not disputed, the issue necessarily presents only a pure question of law for the court or can involve a question of fact for the jury." No. 3:12-cv-00099, 2012 WL 2576392, at *7 n.5 (M.D. Tenn. July 2, 2012) (citing Christian Steuben, Judge or Jury? Determining Deception or Misrepresentation Under the Fair Debt Collection Practices Act, 78 Fordham L. Rev. 3107, at 3135–49 (2010)); see also Stimpson v. Midland Credit Mgmt., Inc., 944 F.3d 1190, 1196 n.5 (9th Cir. 2019) (noting circuit split). While this circuit split still exists, "[t]he Sixth Circuit is among those circuits holding that, under appropriate circumstances, whether a practice violates § 1692e may implicate a genuine dispute of material fact that a jury must decide." Samples, at *7 n.5; Kistner, 518 F.3d at 441.

9

to McClanahan's phone call, Medicredit immediately confirmed that she was not the debtor, removed her as the guarantor for Stinson's Centennial account, and never contacted her about that debt again. (Doc. No. 61 at ¶¶ 38–40.)

The pertinent case law does little to resolve this issue, with some courts categorically finding "that an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt in violation of [§] 1692e," see Bodur, 829 F. Supp. 2d at 254 (S.D.N.Y. 2011) (citations and internal quotation marks omitted) (collecting cases), and others holding that a debt collector may not violate § 1692e when it attempts to collect from a non-debtor only once, see id. at 255 (citing Shapiro v. Law Offices of Cohen & Slamowitz, LLP., 06 Civ. 3773, 2007 WL 958513, at *3 (S.D.N.Y. Mar. 28, 2007). And at least one district court in the Sixth Circuit has routinely held "that when a plaintiff *knew* that the debt collection agency was not attempting to collect on a debt owed by him, then as a matter of law, he cannot sustain an FDCPA claim under § [1692e]. . . ." See McDermott v. Randall S. Miller & Assocs., P.C., 835 F. Supp. 2d 362, 371–72 (E.D. Mich. 2011) (citing Kane v. National Fin. Servs., Inc., No. 11-cv-11505, 2011 WL 6018403, at *4 (E.D. Mich. Nov. 7, 2011) (emphasis added)); but see Wagner v. Chiari & Illecki, LLP, No. 15-CV-633-FPG, 2019 WL 1083025, *5 (W.D.N.Y. Mar. 7, 2019) (noting that "[n]o courts outside the Eastern District of Michigan have" read a knowledge requirement into § 1692e) (rev'd on other grounds). Therefore, because the least sophisticated consumer standing in McClanahan's position could reasonably interpret Medicredit's letter as either being deceptive or a mistake, it should be up to the jury to decide whether Medicredit violated § 1692e.

b.      Bona Fide Error Defense

Medicredit argues that even if its April 6, 2018 letter was false, misleading, or deceptive under §§ 1692e, e(2)(A), or e(10), the bona fide error defense absolves it from liability because it reasonably relied on Centennial's representation that McClanahan was the guarantor for Stinson's

account. To qualify for the bona-fide-error defense under § 1692k and avoid liability for a FDCPA violation, a debt collector must prove by a preponderance of the evidence that (1) the FDCPA violation was unintentional, (2) it was the result of a bona fide error, and (3) the debt collector maintained procedures reasonably adapted to avoid the error. 15 U.S.C. § 1692k(c); Currier, 762 F.3d at 537 (citing Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 614 (6th Cir. 2009)); Smith v. Transworld Sys., Inc., 953 F.2d 1025, 1034 (6th Cir. 1992).

The Court finds that Medicredit satisfied the first element of the bona-fide-error defense because it is undisputed that when Medicredit learned that McClanahan was not the guarantor for Stinson's account, it immediately corrected the error and never contacted McClanahan about that debt again. Thus, there is no evidence in the record from which a jury could find that Medicredit subjectively intended for its April 6, 2018 letter to be deceptive or misleading. See Lewis v. ACB Business Servs., Inc., 135 F.3d 389, 402 (6th Cir. 1998) (noting that the bona fide error defense requires the debt collector to show that it did not intend to violate the FDCPA, not that the communication itself was unintentional).

Turning to the second element of § 1692k(c), it is undisputed that McClanahan is Stinson's mother, Stinson was a dependent on McClanahan's insurance, and Centennial submitted a document to Medicredit erroneously listing McClanahan as the guarantor for Stinson's account. (Doc. No. 61 at ¶¶ 16–17, 20, 23.) Viewing these facts in the light most favorable to Medicredit, a jury certainly could agree with Medicredit that it had a bona fide, honest belief that McClanahan was the guarantor for Stinson's account. (See Doc. No. 54 at 9.) But when viewing these facts in the light most favorable to McClanahan, a jury could also find that it was not objectively reasonable for Medicredit to rely on Centennial's defective electronic file, particularly when the birthdate information was incorrect and there was no written contract signed by McClanahan

11

establishing her as a guarantor for Stinson's debt. (See Doc. No. 62 at 8–9.) Accordingly, the Court cannot find for either party as a matter of law, and the jury will need to resolve this issue at trial.

The third element of the bona fide error defense involves a two-step inquiry. "The first step is to determine whether the debt collector maintained—i.e., actually employed or implemented—procedures to avoid errors; and, second, whether the procedures were reasonably adapted to avoid the specific error at issue." Durthaler v. Accounts Receivable Mgmt., Inc., 854 F. Supp. 2d 485, 494 (S.D. Ohio 2012) (citing Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006)) (internal quotation marks omitted); see also Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1273–74 (11th Cir. 2011).

Regarding the first step, there is no dispute that Medicredit has a policy of simply relying on the information provided by its client-creditors, including Centennial, without conducting any independent investigation into whether the data is accurate. (Doc. No. 61 at ¶¶ 12, 14; see also Doc. No. 56-12 at 6.) Medicredit also has a written policy requiring medical facilities to obtain all necessary signatures on all registration forms, and Don Wright, Medicredit's corporate representative, testified that Medicredit's employees receive formalized FDCPA training. (See Doc. No. 56-12 at 7). These procedures are enough to satisfy the first step of the analysis because "[t]he Sixth Circuit and district courts within the Sixth Circuit have found a debt collector's reliance on its creditor clients to supply accurate information regarding the amount and related information regarding a debt is a reasonable procedure justifying application of the bona fide error defense," even if the debt collector did not "conduct its own investigations . . . [of] information supplied by its clients." Roe v. Roosen, Varchetti & Olivier, PLLC, No. 18-CV-13536, 2020 WL 1873329, at *3 (E.D. Mich. Apr. 15, 2020) (collecting cases); Transworld Sys., 953 F.2d at 1032;

see also Owen, 629 F.3d at 1274 (finding that the debt collector "has met the low threshold required by the first step" of this analysis).

Notwithstanding this Sixth Circuit caselaw, Plaintiffs filed a Notice of Supplemental Authority (Doc. No. 65), to which Medicredit responded (Doc. No. 67), informing the Court about a recent Ninth Circuit decision allegedly holding that a debt collector's unquestioned reliance on a creditor to provide accurate debt balance information "fails to qualify as a procedure reasonably adapted to avoid the [FDCPA] violation." Urbina v. Nat. Bus. Factors, 816 F. App'x 232, 233–34 (9th Cir. 2020). Not only is Urbina out-of-circuit, unpublished, and nonprecedential even in the Ninth Circuit, but it also does not stand for the broad rule proposed by Plaintiffs. Instead, Urbina merely held that "[t]he district court erred by concluding *as a matter of law*" that the debt collector's boilerplate agreement requiring the creditor to provide accurate information was enough to establish a bona fide error defense. Id. at 233 (emphasis added). Here, unlike in Urbina, there is a factual dispute about the adequacy of Medicredit's procedures that makes summary judgment inappropriate. Until the Sixth Circuit changes course and adopts the holding in Urbina, the Court finds that maintaining reasonable procedures does not require a debt collector to conduct "an independent investigation of the debt referred for collection." Transworld Sys., 953 F.2d at 1032.

The second step asks whether Medicredit's procedures were reasonably adapted to avoid the specific error at issue in this case, i.e. mistaking McClanahan as the guarantor for Stinson's account. Although "the FDCPA does not require debt collectors to independently investigate and verify the validity of a debt to qualify for the bona fide error defense[,] . . . the debt collector has an affirmative statutory obligation to maintain procedures reasonably adapted to avoid *readily discoverable errors*." Owen, 629 F.3d at 1275. For example, in Owen, the Eleventh Circuit held

13

that a debt collector "blindly relying on creditors to send only valid debts is a procedure, but it is not one reasonably adapted to avoid the type of erroneous interest charges at issue" because the calculation errors "were discernible on the face of [the client's] documents forwarded to [the debt collector] and therefore readily discoverable by [the debt collector]." Id. And in Roe, a case that Medicredit cites extensively in support of its position, the Court acknowledged that a debt collector may have to perform its own investigation if the error "was discernible on the face of the documents supplied by the creditor." 2020 WL 1873329, at *3 (distinguishing Owen because "in that case, the inaccuracy of the interest deemed owing was discernible on the face of the documents supplied by the creditor").

Here, there are genuine disputes of material fact regarding whether Centennial's flawed electronic file contained a readily discoverable error and whether Medicredit maintained procedures reasonably adapted to avoid that error. McClanahan argues that the file "contain[ed] the same birth date and age at the time of service (22) for both Stinson and McClanahan but different social security numbers," (see Doc. No. 56-6), and "[a] cursory review of this information likely would have alerted a reasonable person that the information was inaccurate enough to . . . seek further information from the creditor." (Doc. No. 45 at 12.) If a jury agreed with McClanahan and found that the birthdate discrepancy was a "readily discoverable" error, Medicredit may not be entitled to the bona fide error defense because its policy of blindly relying on client information would *never* remedy an error in Centennial's documents. On the other hand, a jury could easily agree with Medicredit and find that "even if Medicredit had noticed this discrepancy, . . . [i]t would not have been reasonable for Medicredit to [conclude] that McClanahan was not the guarantor on Stinson's Centennial Account simply because [a] mother and daughter were listed as having the same birthdate." (Doc. No. 54 at 9–10); see also Beattie v. D.M. Collections, Inc., 754 F. Supp.

14

383, 392 (D. Del. 1991) (noting that "there is room within the [FDCPA] for ethical debt collectors to make occasional unavoidable errors without subjecting themselves to automatic liability"). There is also an overarching dispute of fact about whether Medicredit's policy of relying on its creditor's information, along with its written policy regarding signature requirements and its employee training program (which Wright referenced at his deposition), were reasonably adapted to avoid mistaking a nondebtor as a guarantor. Because these issues represent material factual disputes between the parties (see Doc. No. 59 at ¶ 16), they must be resolved by the jury at trial, rather than by the Court on summary judgment. See Ewers v. Rainmaker Recovery 3, Inc., 393 F. Supp. 3d 614, 618 (E.D. Mich. 2019) (holding that "whether [a debt collector] maintained procedures reasonably adapted to avoid the error . . . is an objective and fact-intensive inquiry that is generally left to the fact-finder"); Owen, 629 F.3d at 1277 ("reiterat[ing] that the third element of the bona fide error defense is a uniquely fact-bound inquiry susceptible of few broad, generally applicable rules of law").

In sum, because there is a genuine issue of material fact about whether Medicredit's April 6, 2018 letter would have misled the least sophisticated consumer, and because the Court cannot conclude as a matter of law that Medicredit maintained procedures reasonably adapted to avoid mistaking McClanahan as the guarantor for Stinson's account, the Court will deny both parties' motions for summary judgment as to McClanahan's claims under §§ 1692e, e(2)(A), and e(10).

2. Sections 1692f and 1692f(1)—Catchall Provision for Unfair Practices

Section 1692f is a broad catchall provision that generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," and § 1692f(1) specifically proscribes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." These sections are "intended to cover actionable

15

debt collection practices that may not be expressly addressed in" the other sections of the FDCPA, Williams v. Javitch , Block & Rathbone, LLP, 480 F. Supp. 2d 1016, 1023 (S.D. Ohio 2007), meaning a § 1692f claim fails where a plaintiff does not identify "conduct that would not be covered by a different FDCPA provision," Smith v. Greystone Alliance LLC, No. 1:14CV722, 2015 WL 5232812, at *1 (N.D. Ohio Sept. 8, 2015).

Here, McClanahan's §§ 1692f and f(1) claims should be dismissed for several reasons. First, McClanahan makes no effort to differentiate the factual basis for her § 1692e and § 1692f claims, and instead argues that Medicredit's attempt to collect from her for Stinson's medical debt collectively violated §§ 1692e, e(2)(A), e(10), f, and f(1). (Doc. No. 45 at 6–7; see also Doc. No. 33 at 8–9.) Second, § 1692f aims to prevent the "abusive practice of collecting an amount greater than that which is owing," and as the Court explained above in its analysis of her § 1692e(2)(B) claim, McClanahan has not shown that Medicredit attempted to collect more than what Stinson owed to Centennial. Beattie, 754 F. Supp. at 391–92. Last, a debt collector's attempt to collect from the wrong individual is best characterized as going to the character or status of the debt, which is covered by § 1692e(2)(A), rather than the amount owed. Id. at 392. Because McClanahan's §§ 1692f and f(1) claims are duplicative of her § 1692e claims and are based on conduct expressly addressed in other sections of the FDCPA, the Court will grant Medicredit's motion for summary judgment with respect to these claims.

B.     McClanahan's Claims Based on Medicredit's Disclosure of Her Debts and Medical
       Records to CFPB

McClanahan also claims that Medicredit violated §§ 1692c(b) and 1692d and committed the tort of intrusion upon seclusion by disclosing her alleged debts and personal medical history to the CFPB. Again, the Court will address each of these provisions separately.

16

1.      Section 1692c(b), Third Party Communications

Section 1692c(b) prohibits, with limited exceptions not relevant here, a debt collector from "communicat[ing], in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b).

Medicredit admits that it communicated with the CFPB about McClanahan's accounts, but argues that those communications did not violate § 1692c(b) because they were not made "in connection with the *collection* of any debt." (See Doc. No. 54 at 16–17 (emphasis added).) Instead, Medicredit contends that it disclosed McClanahan's debt information merely to defend against her complaint and explain to the CFPB why it had contacted her on other occasions. (Id.) In response, McClanahan argues that her § 1692c(b) claim should proceed to trial because "[a] jury could find that [Medicredit's] inclusion of [her] other debts and . . . the balances owing, which had no relation to the debt being complained of was an attempt to collect" a debt. (Doc. No. 62 at 16–17.)

"[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." Grden, 643 F.3d at 173 (citing Gburek v. Litton Loan Serv. LP, 614 F.3d 380, 385 (7th Cir. 2010)). The Sixth Circuit shed light on this standard in Grden, where it analyzed whether a debt collector violated § 1692e by providing inaccurate information in response to a debtor's request to verify his account balance. Id. at 171–72. In determining whether the incorrect balance statements were "in connection with the collection of a debt," the Grden court held as follows:

> Here, on one hand, the balance statements obviously came from a debt collector—indeed from one that had already sued [the debtor]—and they stated a balance "due." On the other hand, the statements themselves did not demand payment or threaten any consequences if [the debtor] did not pay. But for us the decisive point is that [the debt collector] made the balance statements only after [the debtor] called and asked for them. The statements were merely a ministerial response to a debtor

17

> inquiry, rather than part of a strategy to make payment more likely. Thus, under the circumstances present here, a reasonable jury could not find that an animating purpose of the statements was to induce payment by Grden.

Id. at 173 (citation omitted). Here, like the statements at issue in Grden, Medicredit's response to the CFPB came from a debt collector and stated a balance due, but did not demand payment or threaten any consequences if McClanahan did not pay. But unlike in Grden, there is no "decisive point" here that would allow the Court to decide as a matter of law whether an animating purpose of Medicredit's response was to induce McClanahan's payment. Indeed, depending on which party is believed and what inferences are drawn from the record, a trier of fact could reasonably find either that Medicredit disclosed McClanahan's account information to the CFPB solely to defend against her complaint, or that an animating purpose of Medicredit's seemingly unnecessary disclosure of debt information unrelated to McClanahan's complaint was to remind her about her outstanding other balances and to induce their payment.

Because there is a genuine issue of material fact about whether Medicredit's response to the CFPB was "in connection with the collection of any debt," the Court will deny both motions for summary judgment on McClanahan's § 1692c(b) claim.

### 2. Section 1692d, Harassment

Section 1692d provides that a "debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Without defining what "harass, oppress, or abuse" is, the statute sets forth a nonexhaustive list of prohibited conduct, including using threats of violence or profane language, placing multiple harassing calls, and calling without disclosing the caller's identity. See 15 U.S.C. § 1692d(1)–(6). Where, as here, the relevant conduct at issue is not incorporated in this enumerated list, the question of whether the conduct "harasses, oppresses, or abuses will

[ordinarily] be a question for the jury[.]" Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 330 (6th Cir. 2006) (quoting Jeter v. Credit Bureau, 760 F.2d 1168, 1179 (11th Cir. 1985)) (internal quotation marks omitted); see also Fielding v. FCC Fin., LLC, No. 3:12-cv-00194, 2015 WL 12532741, at *5 (M.D. Tenn. Jan. 22, 2015). However, "Congress has indicated its desire for the courts to structure the confines of § 1692d[,]" and "[c]ourts have therefore dismissed claims filed pursuant to § 1692d as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor." Harvey, 453 F.3d at 330 (quoting Jeter, 760 F.2d at 1179).

The Court concludes that neither party is entitled to summary judgment on McClanahan's § 1692d claim for two overarching reasons. First, as discussed above with respect to McClanahan's § 1692c(b) claim, see supra Section III.B.1, there is a genuine issue of material fact regarding whether Medicredit's disclosure of her financial and medical information was "in connection with the collection of a debt." Second, even if the Court found that Medicredit's communication was in connection with the collection of a debt, it cannot conclude as a matter of law that disclosing personal information under these circumstances would have the natural or logical consequence of harassing, abusing, or oppressing a debtor from the standpoint of the least sophisticated consumer. On one hand, the Sixth Circuit has interpreted § 1692d to prohibit tactics intended to "embarrass" or "upset" a debtor, Harvey, 453 F.3d at 330, and disclosing sensitive medical information without consent could certainly be embarrassing or upsetting. On the other hand, the Sixth Circuit has also stated that the "scare tactics" envisioned in § 1692d "are likely to cause the suffering and anguish which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have." Id. Based on this reasoning, a jury could reasonably find that Medicredit's disclosure of McClanahan's personal information to the CFPB either did or did not have the natural consequence of causing her fear about owing money she did not have.

19

Accordingly, the Court will also deny both motions for summary judgment on McClanahan's § 1692d claim.

### 3. Intrusion Upon Seclusion Under Tennessee Law

Tennessee recognizes several distinct causes of action for invasion of privacy, see Rodgers v. McCullough, 296 F. Supp. 2d 895, 902–03 (W.D. Tenn. 2003), but the Amended Complaint and McClanahan's summary judgment briefing make clear that her privacy claim is based *solely* on intrusion upon seclusion. (See Doc. No. 60 at 4.) Accordingly, the Court will decide only whether McClanahan has established a claim for intrusion upon seclusion, not whether she has established any other invasion of privacy claims.

The Tennessee common law tort for invasion of privacy by intrusion upon seclusion mirrors § 652B of the Restatement (Second) of Torts. Givens v. Mullikin *ex rel*. Estate of McElwaney, 75 S.W. 3d 383, 411 (Tenn. 2002) (citing Roberts v. Essex Microtel Assocs., II, LP, 46 S.W. 3d 205, 211 (Tenn. Ct. App. 2001)). Under the Restatement, a "defendant is subject to liability . . . only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Restatement (Second) of Torts § 652B (1977). Thus, to recover under this tort, a plaintiff must establish three elements: "(1) an intentional intrusion, physical or otherwise; (2) upon the plaintiff's solitude or seclusion or private affairs or concerns; (3) which would be highly offensive to a reasonable person." Teno v. Iwanski, --- F. Supp. 3d ---, 2020 WL 2843217, at *9 (E.D. Tenn. 2020) (quoting Burnette v. Porter, No. W2010-01287-COA-R3-CV, 2011 WL 4529612, at *4 (Tenn. Ct. App. Sept. 30, 2011)).

Here, McClanahan has not offered any evidence that an "intrusion" took place. Specifically, there is no evidence to suggest that Medicredit procured her financial or medical information through improper means, nor is there anything in the record to suggest that Medicredit did not have a legal right to possess this information. Accord Givens, 75 S.W. 3d at 390–392

20

(dismissing plaintiff's intrusion upon seclusion claim because she failed to prove that defendants did not have a legal right to her medical information). Without evidence that Medicredit wrongfully accessed McClanahan's information, no reasonable juror could find for McClanahan on her intrusion upon seclusion claim regardless of whether Medicredit's disclosure of her personal information would be highly offensive to a reasonable person.[8] Accordingly, the Court will grant Medicredit's motion for summary judgment as to this claim.

C.   Stinson's Claims Based on Medicredit's Disclosure of Her Debt to McClanahan

Stinson also brings claims against Medicredit for allegedly violating §§ 1692b, c(b), d, e, e(10), and f, and committing the tort of intrusion upon seclusion by disclosing her unpaid Centennial debt to McClanahan without her permission. In addressing Stinson's claims, the Court incorporates by reference the legal standards explained in greater detail above.

1.   Section 1692b, Safe Harbor for Location Inquiries

Stinson asserts that Medicredit violated § 1692b by communicating with McClanahan in connection with the collection of a debt and for purposes other than to acquire Stinson's "location information." (See Doc. No. 44 at 2.) The Court will dismiss this claim as a matter of law because "[n]oncompliance with § 1692b is . . . not an independent violation of the [FDCPA]." Litt v. Portfolio Recovery Assocs. LLC, 146 F. Supp. 3d 857, 867 (E.D. Mich. 2015) (quoting Morant v. Miracle Fin. Inc., No. 11-4140, 2012 WL 4174893, at *3 (E.D.N.Y. Sept. 17, 2012). Rather, § 1692b merely provides a "safe harbor" against a § 1692c(b) violation when a debt collector

---

[8] Plaintiffs argue that "the release of medical records has been found by the Tennessee legislature to be a *per se* invasion of privacy[,]" through the enactment of Tenn. Code. Ann. § 63-2-101(b)(2). (Doc. No. 60 at 4.) Putting aside that § 63-2-101(b)(2) applies only to "health care providers," the Court reiterates that it is not deciding whether Medicredit invaded McClanahan's privacy in the abstract or whether the disclosure of medical records could support a different claim. Rather, the Court holds only that, based on the evidence in the record, McClanahan did not meet her burden to show that Medicredit invaded her privacy *by intrusion upon seclusion*.

communicates with a third party to acquire location information about the debtor. Brown III v. Van Ru Credit Corp., 804 F.3d 740, 745 (6th Cir. 2015) (citing 15 U.S.C. § 1692). In other words, "a consumer still may maintain an action against a debt collector for a failure to adhere to the requirements of § 1629b, but [she] must do so under § 1692c(b)." Litt, 146 F. Supp. 3d at 867.

Accordingly, the Court will dismiss Stinson's § 1629b claim.[9]

2.    Section 1692c(b)

It is undisputed that on April 6, 2018, Medicredit sent a letter to McClanahan seeking payment on Stinson's Centennial Account. (Doc. No. 61 at ¶ 35.) Stinson also testified that she did not give Medicredit permission to disclose her account information. (Doc. No. 45-4 at 3.) Thus, the Court concludes that Medicredit violated § 1692c(b) by communicating with a third party in connection with the collection of a debt without receiving Stinson's prior consent to do so.

Notwithstanding this conclusion, however, the Court will not grant summary judgment on Stinson's § 1692c(b) claim because there is still a genuine issue of material fact as to whether Medicredit is entitled to the bona fide error defense for its conduct. See supra Section III.A.1.b; see also Litt, 146 F. Supp. 3d at 876 (denying defendant's motion for summary judgment because "[g]enuine issues of material fact remain for trial regarding whether [defendant] is entitled to invoke the bona fide error defense to avoid liability on [plaintiff's] claim that [it] violated § 1692c(b)"). If Medicredit can successfully invoke the bona fide error defense at trial and convince the jury that it reasonably relied on Centennial's representation that McClanahan was the guarantor for Stinson's account, then Medicredit may not be liable under § 1692c(b) for mistakenly believing that Stinson implicitly consented to Medicredit contacting her mother about her debt.

---

[9] Although the Complaint asserts that Medicredit also violated § 1692b as to McClanahan (see Doc. No. 33 at 8), Plaintiffs do not argue this issue in their summary judgment briefing. But to the extent that McClanahan is asserting a § 1692b claim, that claim will also be dismissed.

22

Accordingly, the Court will deny both motions for summary judgment on Stinson's § 1692c(b) claim.

### 3. Section 1692d

Unlike McClanahan's § 1692d claim, Stinson's § 1692d claim fails as a matter of law because no jury could reasonably find that Medicredit's April 6, 2018 letter had the natural consequence of harassing, abusing, or oppressing Stinson. Regardless of whether Medicredit is entitled to the bona fide error defense, it is undisputed that Centennial provided McClanahan's contact information to Medicredit and indicated that she was the guarantor for Stinson's account. (Doc. No. 61 at ¶ 16, 17; Doc. No. 56-6.) And there is no evidence in the record that would allow the Court to reasonably infer that Medicredit contacted McClanahan about Stinson's debt for any reason other than its mistaken belief that she was the guarantor. Sure, Medicredit's April 6, 2018 letter may have been unwanted, but no trier of fact could reasonably find that it was intended to harass, oppress, or abuse Stinson. See Harvey, 453 F.3d at 330 (citing Kerr v. Dubowsky, 71 F. App'x 656, 657 (9th Cir. 2003)). Nor does Stinson make any arguments in her summary judgment briefing that would suggest otherwise.

Accordingly, the Court will grant Medicredit's motion for summary judgment on Stinson's § 1692d claim.

### 4. Sections 1692e and 1692e(10)

The threshold issue for Stinson's § 1692e and § 1692e(10) claims is whether she has standing to sue Medicredit for sending an allegedly misleading letter about her debt to *McClanahan*. Although Medicredit argues that Stinson does not have standing because "no representation was made to her," (Doc. No. 54 at 7), neither party has offered any legal authority in support of or in opposition to this argument. Nor is the Court aware of any Sixth Circuit opinion

that has decided whether a debtor has standing to sue under § 1692e for a debt collection letter sent to a third party. Thus, a review of general standing principles will be instructive here.

To establish Article III standing, a plaintiff must show she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). The plaintiff has the burden of establishing all three elements and, at the summary judgment stage, "cannot rely on allegations alone but must set forth evidence demonstrating [her] standing." Huff v. TeleCheck Servs., Inc., 923 F.3d 458, 462 (6th Cir. 2019); see also Exec. Transp. Sys. LLC v. Louisville Reg'l Airport Auth., 678 F. Supp. 2d 498, 505 (W.D. Ky. 2010) ("On summary judgment, proof of standing is subject to the same burden of proof and standard of review as any other critical fact: Plaintiffs must be able to show at least the existence of a genuine issue of material fact as to the elements of standing if their claims are to survive.").

Injury in fact is the "[f]irst and foremost" element of standing. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S.Ct. at 1548 (quoting Lujan, 504 U.S. at 560). As relevant here, a "particularized" injury means it "must affect the plaintiff in a personal and individual way," id. (quoting Lujan at 560 n.1), and concreteness refers to a tangible or intangible harm that is real, and not abstract, id. (citations and internal quotation marks omitted). Congress has broad power to identify and define intangible injuries by statute (like the FDCPA) that would not otherwise be actionable in federal court, Lujan at 578, but its authority is limited by Article III's requirement that there be some concrete injury even in the context of a statutory

violation, Spokeo at 1549. See also Lyshe v. Levy, 854 F.3d 855, 858 (6th Cir. 2017) (emphasizing that Congress's power to create intangible injuries "does not eliminate the requirement that a plaintiff actually suffer harm that is concrete").

In enacting the FDCPA, Congress sought to protect debtors' interests in avoiding "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," 15 U.S.C. § 1692(a), and § 1692e serves this end by prohibiting debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" 15 U.S.C. § 1692e. When the facts are viewed most favorably to Stinson and every inference is made in her favor, which the Court is required to do at this stage, the Court does not find that she has shown any harm or material risk of harm to these protected interests. For example, Stinson does not allege that she was the target of Medicredit's April 6, 2018 letter, nor does she argue that the letter personally misled her in any way or confused her about who was responsible for paying her Centennial debt. At most, Stinson read the letter sent to her mother, but it had no effect on her understanding that she was solely responsible for her own debt. (See Doc. No. 57-2 at 5–6.) Because Stinson has not set forth evidence demonstrating that *she* suffered any particularized, concrete harm by reading Medicredit's April 6, 2018 letter, she has not carried her burden to show she suffered an injury-in-fact to confer standing. See Sierra Club v. Morton, 405 U.S. 727, 734–35 (1972) (holding that the "'injury in fact' test . . . requires that the party seeking review be himself among the injured").

Accordingly, the Court will grant Medicredit's motion for summary judgment as to Stinson's § 1692e and § 1692e(10) claims.

> 5. Section 1692f

The Court will dismiss Stinson's § 1692f claims for the same reasons that it dismissed McClanahan's §§ 1692f and f(1) claims. (See *supra* Section III.A.2.) Specifically, Stinson's §

1692f claim is duplicative of her other FDCPA claims, see Smith, 2015 WL 5232812, at *1, and she has not shown that Medicredit attempted to collect more than what she owed to Centennial, Beattie, 754 F. Supp. at 391–92. Moreover, Accordingly, the Court will grant Medicredit's motion for summary judgment on Stinson's § 1692f claim.

6.      Intrusion Upon Seclusion Under Tennessee Law

Stinson also argues that Medicredit committed the Tennessee common law tort of intrusion upon seclusion by sending McClanahan the April 6, 2018 letter and revealing that Stinson had visited Centennial Medical Center. Like McClanahan's intrusion upon seclusion claim, Stinson's claim fails as a matter of law because she has not shown that an "intrusion" took place. For example, Stinson has failed to make a threshold showing that Medicredit procured her Centennial account information through improper means or did not have a legal right to possess that information. See Givens, 75 S.W. 3d at 390–392. Accordingly, the Court will grant Medicredit's motion for summary judgment as to Stinson's intrusion upon seclusion claim.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 44) will be denied and Medicredit's Motion for Summary Judgment (Doc. No. 53) will be granted in part. The Court will dismiss McClanahan's §§ 1692b, e(2)(B), f, and f(1) claims; Stinson's §§ 1692b, d, e, e(10), and f claims; and both Plaintiffs' claims for intrusion upon seclusion. Plaintiffs' remaining claims will proceed to trial.

An appropriate order will enter.

_____<br>
WAVERLY D. CRENSHAW, JR.<br>
CHIEF UNITED STATES DISTRICT JUDGE